UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RODNEY ROGERS, § | |
| PLAINTIFF § | |
| § | |
| v. § | CIVIL ACTION NO. 4:16-cv-3763 |
| § | |
| § | |
| COMMERCIAL METALS COMPANY § | |
| dba CMC CONSTRUCTION § | |
| SERVICES, § | |
| DEFENDANT § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT SITTING IN THE SOUTHERN DISTRICT OF TEXAS:

Plaintiff Rodney Rogers (hereafter "Rogers") files his Original Complaint against Defendant Commercial Metals Company dba CMC Construction Services (hereafter "CMC").

### I.    SUMMARY OF THE ACTION

1. Rogers, prior to March 10, 2016, was an employee of CMC.

2. Rogers' employment with CMC was terminated on March 10, 2016 in retaliation for Rogers asserting his rights to be free from employment discrimination including harassment.

3. Rogers asserted his rights by engaging in the following activities:

    a.  communicating verbally and in writing via email and the company complaint line with human resources about employment discrimination, including harassment; and

    b.  filing an EEOC intake and charge of discrimination about harassment, discrimination and retaliation.

4. At all times Rogers was acting under the reasonable belief that something in the workplace violated EEO laws.

1

## II.     NATURE OF THE ACTION

5.     This case is brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

## III.     JURISDICTION AND VENUE

6.     This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C §1331 because Rogers asserts claims arising under federal law.

7.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to Rogers' claims occurred in Brazos County.

## IV.     PARTIES

8.     Plaintiff Rodney Rogers is a resident of Brazos County, Texas.

9.     Defendant Commercial Metals Company dba CMC Construction Services is a Delaware corporation with its headquarters located in the state of Texas and an office located in Brazos County, Texas. CMC may be served with citation, including a copy of this Complaint, by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St, Suite 900, Dallas, Texas 75201.

## V.     DEMAND FOR JURY TRIAL

10.     Plaintiff respectfully demands a trial by jury.

## VI.     FACTS

11.     Rogers was employed as a truck driver working at CMC's offices called CMC Construction Services, 10650 SH 30, College Station, Texas 77845.

12.     Rogers worked at this location for approximately over twelve years as a truck driver.

13.     Upon information and belief, there were approximately 21 to 22 full time employees working regularly and daily in the College Station location from 2011 until Rogers' termination. Upon information and belief, Rogers was the only black employee in the College Station

location for that entire time (one other black employee worked a couple of months) and the only black truck driver.

14.     On April 4, 2015, Rogers made a complaint to Human Resources about his perceived harassment on the basis of his race/color and his perceived discrimination with regard to his request to be transferred to an inside sales job.

15.     Rogers reported multiple examples of harassment and also reported discrimination.

16.     Rogers requested a copy of the complaint he filed, and CMC ignored his request and would not give him a copy.

17.     For some time prior, to his complaint on April 4, 2015, Rogers had been requesting to be transferred from truck driving to inside sales.

18.     Rogers was always given some excuse by management why it was not in his best interest to transfer.

19.     Rogers had seen multiple replacements in the inside sales position and they were always Caucasian—upon information and belief, no black employees were hired for the inside sales job at the College Station location both during the time that Rogers had been requesting a transfer and until Rogers' termination from employment.

20.     On October 1, 2015, Rogers was informed that his daily start time of 8 am during the school year (he was allowed to start at 8 am since he was a single parent so he could take his children to school) was being changed to 7 am as of November 1, 2015.

21.     Rogers was told that this was necessary due to a company-wide policy decision because the busiest time of the day was 7 am to 8 am.

22.     After working there for more than ten years, Rogers knew that 7 am to 8 am was not the busiest time and believed that such reasons were pretext and that the change in his start time was actually made to punish him for his reporting harassment and discrimination.

23.     On October 1, 2015, Rogers made another complaint on the company hotline to Human Resources regarding his perceived harassment by the new decision to change his start time.

24.     Some other examples of the harassment of Rogers at CMC include the following:

a. Rogers' route supervisor as a truck driver, Frank Patranella, Caucasian, would frequently, even daily, follow Rogers every time Rogers went anywhere in the store and office, even to the restroom, and even opened the restroom door when Rogers had locked it—Patranella did not follow the Caucasian employees around.

b. Rogers was suspended for a day for moving his truck from five to ten feet without putting on his seatbelt even though Caucasian supervisors would do the same thing frequently without being suspended.

c. Rogers was in Justin Weiler's office to inquire about the inside sales position and Weiler told Rogers that he had an odor coming from him, that Weiler knew Rogers' had allergies and that Rogers should try another type of soap.

d. Patranella told Rogers that he was sending Rogers' ass on a long ride.

e. Rogers found a dead animal someone had put in his closed tool box.

f. Rogers was called into the office and reprimanded for speeding warnings and upon information and belief the Caucasian drivers were not reprimanded for speed warnings.

25.     On February 5, 2016, Frank Patranella called Rogers a "son of a bitch" and he had never used such language with Rogers prior to Rogers complaining about discrimination.

26. On March 9, 2016, it was raining and Rogers was not making deliveries due to the rain, as was normal. Rogers would just look around the yard for work he could do to make himself useful. Rogers never saw the Caucasian drivers do other work around the yard when they were not making deliveries, and instead they would just be lounging around.

27. As Rogers was organizing materials in the lumber yard, Frank Patranella walked up to him and says, "while you are organizing things go ahead and pick up the banding materials and trash around the area since it is slow." Rogers told him that he was not going to pick up trash, when others around him were not asked to do the job also. This was nothing new, as the Caucasians would stand around and watch as Rogers kept himself busy.

28. The other choice was to help clean up the warehouse. That was the area Rogers picked. So he went upstairs and started picking up papers and trash. As he was organizing the area, all of a sudden he started feeling sick. After giving it a few minutes, he went down stairs and told Patranella that he was not feeling so well and needed to go home sick. Patranella told Rogers that he was the only driver present and that he needed to wait until another driver returns from delivery. Rogers told him ok.

29. Bucky, the other driver did return and went into the office. Rogers noticed that Patrenalla came outside along with Justin the store manager. After talking with another worker, Patranella went back in the office. Rogers went in the office and told Patranella that the other driver had returned and asked again if he could go home sick.

30. Patranella told Rogers "no, you gotta stay. Bucky is doing safety and the fab shop needs someone to help, and that is you."

31.     After Rogers explained to Patranella that he was still feeling sick and that he would not want to work the fab shop, Patranella told him that he needed to talk to Weiler, the store manager. They walked into Weiler's office, and Patranella shut the office door.

32.     Rogers told Weiler that Rogers had told Patranella that Rogers was not feeling well and asked if he could go home. Patranella gave Rogers a look as if Rogers had made the whole thing up just to get out of working the fab shop.

33.     Weiler said that Patranella only told him that Rogers wanted to go home, not that Rogers had told Patranella that he was feeling sick and needed to go home.

34.     Weiler then told Rogers that if he was sick he could go ahead and go home. Based upon Weiler telling him that he could go home if he felt sick, Rogers then proceeded to go home.

35.     On March 10, 2016, Rogers arrived at work at approximately 7 am. Rogers then made deliveries as on any normal day.

36.     Sometime around 2 pm, Patranella told Rogers that he needed to go into the office.  , Rogers was told that he had to meet with Weiler and Patranella. Rogers went into the office and the lady with Human Resources to whom Rogers had been reporting his concerns about harassment and discrimination also was present. They told Rogers he was terminated for insubordination for the events the day before when he had reported that he was feeling ill and needed to go home.

37.     Patranella and Weiler telling Rogers that he had to work in the fab shop was a pretext designed by them to get Rogers to quit or be fired.  It was not part of Rogers' job as a truck driver and Rogers had never in twelve years been asked to do this as part of his job.  Upon information and belief, Patranella and Weiler had not asked the Caucasian truck drivers to work

6

in the fab shop and, in twelve years, Rogers had never seen the Caucasian truck drivers working in the fab shop.

## VII.     CONDITIONS PRECEDENT

38.     Rogers incorporates each of the foregoing paragraphs.

39.     Rogers attempted to resolve his discrimination complaints through the use of the company complaint line with human resources on multiple occasions during 2015.

40.     Rogers first filed an Intake Questionnaire with the EEOC on or about October 24, 2015 and he subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission and amended Charges of Discrimination.

41.     The Intake Questionnaire was filed within 300 days after the discriminatory acts of CMC, a Charge was filed, and an amended Charge of Discrimination was filed after CMC's termination of Rogers' employment.

42.     The EEOC issued Rogers a right to sue letter on September 29, 2016 which he received on September 30, 2016.

43.     This suit is being filed within 90 days of Rogers' receipt of the notice of right to sue from the EEOC.

44.     Rogers has timely exhausted all of his administrative remedies.

## VIII.     CAUSE OF ACTION – UNLAWFUL RETALIATION

45.     Rogers incorporates each of the foregoing paragraphs.

46.     Rogers engaged in protected activity as set forth in 42 U.S.C. § 2000e-3(a).

47.     In response, CMC retaliated against Rogers with increased harassment and ultimately termination of Rogers' employment.

48.     CMC's actions violate 42 U.S.C. § 2000e-3(a).

## IX.     DAMAGES

49.     Rogers incorporates each of the foregoing paragraphs.

50.     CMC's actions violated 42 U.S.C. § 2000e-3(a), which entitles Rogers to recover from CMC back pay, front pay, and compensatory damages, including such damages as out of pocket expenses, mental anguish damages, inconvenience damages, loss of enjoyment of life damages, and possibly others.

51.     Because CMC's actions were done maliciously or recklessly, Rogers is also entitled to recover from CMC punitive damages.

52.     Rogers seeks all damages available to him under federal law.

## X.     ATTORNEYS' FEES AND COSTS

53.     Rogers incorporates each of the foregoing paragraphs.

54.     Rogers retained the services of undersigned counsel to prosecute his claims.

55.     Pursuant to 42 U.S.C. § 2000e-5(k), Rogers is entitled to recover a reasonable attorneys' fee from CMC, including reasonable expert fees and costs.

## XI.     CONCLUSION AND PRAYER

56.     Plaintiff Rodney Rogers respectfully requests that Defendant Commercial Metals Company dba CMC Construction Services be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment awarding Rogers:

    A.     Back pay and front pay (including benefits) as determined by the jury;

    B.     Compensatory damages as determined by the jury;

    C.     Punitive damages as determined by the jury;

    D.     Reasonable attorneys' fees and expert fees;

    E.     Courts costs;

    F.     Pre-judgment and post-judgment interest at the rate set by law; and

G.     All legal or equitable relief this Court deems proper.

       Respectfully submitted,

       /s/ Kervyn B. Altaffer Jr.
       Kervyn B. Altaffer Jr.
       Texas Bar No. 01116575
       So. Dist. Texas No. 6409
       kervyn@altafferlaw.com

       ALTAFFER & CHEN PLLC
       4054 McKinney Ave, Suite 310
       Dallas, Texas 75204
       Telephone: (972) 234-3633
       Facsimile: (972) 947-3663

       Attorney for Plaintiff